HARDY, Judge.
This is a compensation suit in which plaintiff claimed permanent total disability resulting from accidents sustained in the course of his employment. By reason of the death of the claimant-employee, subsequent to trial of this case, his widow, as Executrix of decedent’s estate, was substituted as the party plaintiff and she appeals from judgment rejecting plaintiff’s demands.
The only specification of error assigned as to the judgment appealed from is succinctly stated in the brief of counsel for plaintiff against the holding of the district court that plaintiff failed to prove “ * * an injury or aggravation of his heart condition on December 14, 1961, or that he suffered a hernia or hernias on December 8, 1961, * *
It is clear that the issue presented by this appeal is exclusively factual in nature.
In a well considered written opinion the district judge carefully analyzed the testimony presented and set forth his conclusions as follows:
“Mr. Fitch testified that he was employed by Pro-Con, Inc. as an engineer, having been employed in April, 1961; that on the morning of December eighth it was raining, muddy, and undesirable weather; that they were in a rush to set a particular foundation, and he was to shoot the line and grade on the foundation form; that the form was waterlogged and heavy, and he asked his helper, Howard A. Clements, to get on one side of the form and he would get on the other, and the two carpenters, whose last names were Woodward and Pace, would get on the other side, and they would put it in place; that after picking up the form, his feet slipped out from under him and he went down to a sitting position, more or less on his left side, and continued holding the frame up in this strained position, to keep from pulling Mr. Clements, Mr. Pace and Mr. Woodward over and getting them off balance *191 to where they would fall in the excavated hole, which was about six feet deep, eight feet long, and five feet wide. Mr. Fitch testified that he felt a pain in his left groin at this time; that he told the men with whom he was working that he had a terrific hurting in his left groin, and that he believed he had hurt himself severely; that he continued to work the remainder of the day, although suffering severe pain, up until quitting time; that after he got home he became nauseated and vomited; that he was sick and nauseated for the entire weekend, but came back to work Monday morning. He admitted on cross-examination that he had told none of his superiors of his accident or injury before leaving the job Friday, December eighth. He testified that he returned to work Monday morning and told Mr. Green, a carpenter’s foreman on the job, that he was sick at his stomach, and showed him the actual injury; that he worked Monday, Tuesday and Wednesday. He further testified that on the morning of December 14th it was misting rain; that he parked on the construction parking lot about 7:45 a. m. and walked to the field office which was approximately half a mile away; that when he got to the field office, he told Mr. T. C. Black, the superintendent, that he had pains in his chest and also in his left arm and seemed to be short-winded; that Mr. Black told him to sit down and rest awhile, and gave him a couple of aspirins; that he remained in the office about thirty minutes and, feeling better, went out to the job, lining up and shooting grades on batter boards that were set around an excavation that was made the day before for the Control Room building; that after shooting the line and grades on the batter boards, he went down inside the excavation to make the markings; that after getting into the hole, the backup machine removed the ramp of dirt down which he had descended into the hole, and the only way that he had of getting out was to climb out; that he caught the tops of the batter boards which extended approximately two and a half feet above the top of the excavation (the excavation being approximately four feet deep), drew himself up, and threw his foot up on the bank of the excavation; that the bank was muddy and slick and his foot slipped back and he practically fell back down into the excavation; that as he fell he strained himself, and a severe pain hit him in the chest and left arm; that after moving out of the excavation, he started to the tool room and met his helper, Clements, and told him that he had to have something done quick; that shortly after getting to the tool room, Mr. Black, his superintendent, came in, and he told Mr. Black that he had strained himself trying to get out of the hole and the pain reoccurred and hit him in the chest and left arm and he was in severe pain, and Mr. Black went to call the doctor; that Mr. Black had Mr. Clements, his helper, drive his car into the plant and pick him up and take him to Doctor McKay, at Blanchard; that he told Doctor McKay that the pain in his chest and arm came on while he was straining, climbing out of the hole excavated for the foundation for the Control Room; that Doctor McKay found a left hernia, and plaintiff then told him that he had strained and pulled that hernia on Friday, December 8th, and that he was sick and nauseated all that weekend.
“We have gone into considerable detail concerning the testimony of Mr. Fitch about his alleged injuries on December 8th and December 14th, for the reason that no witness was called to corroborate his testimony on either of the occasions. The only witness, except the doctors, who testified that he was informed by Mr. Fitch of an accident or injury on either December 8th or December 14th, was Mr. Joe L. Parker, office manager of Pro-Con, who testified that the day Mr. Fitch went to the doctor with pains in his chest, he told him that he had *192 strained himself a few days before, believed to have been on Monday, while helping some carpenters lift forms; and that plaintiff again told him that he had strained himself while lifting forms, when he visited him in the hospital. Mr. Parker stated that this accounted for the fact that in making the report to the insurance company, he mentioned the possible rupture, in addition to the pain in the arm and chest.
“As we have already observed, Mr. Fitch admitted that he did not at any time report to his immediate superior, Bill Owen, the assistant superintendent and engineer for Pro-Con, or to T. C. Black, superintendent of construction for Pro-Con, any accident or injury that he experienced on the job, although both had talked to him prior to the time he was carried to the doctor; and while he did tell Joe L. Parker, the office manager, before being carried to the doctor on the morning of December 14th, that he thought he had strained himself, he made no mention of this having occurred that day but, instead, placed it a few days before, and thought it was Monday while he was helping the carpenters lift the form.
“Howard A. Clements, who was assigned as a helper to Mr. Fitch during the time that he was working for Pro-Con, but who was no longer with the company at the time of the trial, denied any knowledge of Mr. Fitch having been injured on any occasion while he was working with him, or that Mr. Fitch ever informed him that he was injured at any time while he was working for the company. Clements confirms the fact that Mr. Fitch was complaining of pain in his left arm and chest at the time he came to work on the morning of December 14th, and that Mr. Fitch informed him that he did not sleep well the night before, and thought that he might have had a mild heart attack.
“The two carpenters, Mr. Pace and Mr. Woodward, whom Mr. Fitch identified as working with him on December 8th when he strained himself while lifting the form, had both left the employ of Pro-Con, Inc. at the time of the trial, and neither was called as a witness.
“Mr. Fitch testified that he had been injured while working at other places, and had drawn compensation for such injuries, which shows that he was not ignorant of the fact that it was necessary that he make a report to his superiors with the company that he had suffered an injury, in order to establish his right to compensation. And in view of the fact that he made no report to anyone connected with the company of any injury, except to Mr. Parker before being taken to the doctor on December 14th that he had strained himself about Monday of that week while helping the carpenters to lift a form, and which had nothing to do with any injury on December 14th when he alleges that he suffered the injury while attempting to climb out of the hole, which precipitated or aggravated his heart condition, we must hold that he has failed to prove by a preponderance of the evidence, an injury, or aggravation of his heart condition on December 14, 1961, or that he suffered a hernia or hernias, as he alleges, on December 8, 1961.”
 It is well established by our jurisprudence that a compensation claimant may sustain the burden of proving the occurrence of an accident solely upon the basis of his own testimony if such testimony is plausible, consistent and supported by corroborating surrounding circumstances. We do not find that the testimony of plaintiff in the instant case, when measured by the required standards, is sufficient to support the conclusion that the accidents were adequately established and that they caused the injuries which resulted in disability.
Careful examination of the record fails to disclose any error, and, on the contrary, *193 supports the conclusion of the district judge.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.